**AFFIRMED as MODIFIED and Opinion Filed December 3, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-01306-CR
No. 05-18-01307-CR
No. 05-18-01308-CR

**GARY LEE CHAPPELL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-53354-N, F16-60423-N, F17-76639-N**

## MEMORANDUM OPINION

Before Justices Whitehill, Schenck, and Richter[1]
Opinion by Justice Whitehill

A jury found appellant guilty of aggravated assault with a deadly weapon and assessed punishment, enhanced, at forty-eight years in prison.

Appellant argues that the evidence was insufficient to support his conviction. He also argues the trial court erred by (i) denying his motion for mistrial when the State's witness testified to hearsay; (ii) denying his objection to a record of jail calls; (iii) granting the State's motion in limine; (iv) overruling his objection to the State's jury argument; (v) overruling his objection to the State's expert and denying him the opportunity to cross-examine the witness; (vi) overruling his objection to four exhibits because they contained hearsay within hearsay and were inadmissible

---

[1] The Hon. Martin Richter, Justice, Assigned

under the Confrontation Clause; (vi) sustaining the State's objection to his cross-examination of the State's fingerprint expert; and (vii) denying his punishment phase mistrial motion concerning the State's allegedly improper questioning of a probation officer.

In a cross-point, the State requests that we modify the judgment to reflect that appellant pled "not true" to the enhancement paragraphs and the jury found them true.

We conclude that (i) the victim's testimony about the assault supported the verdict and it was the jury's role to resolve any conflicts in the testimony and weigh the evidence; (ii) the trial court's instructions were sufficient to cure any error regarding hearsay and probation; (iii) there was sufficient authenticating evidence that appellant made the jail calls; (iv) appellant's limine motion preserved nothing for our review; (v) the State's jury argument about appellant's pre-arrest false identifications did not refer to his decision not to testify; (iv) appellant did not preserve his arguments regarding the admissibility of State's fingerprint expert testimony; (vii) appellant did not preserve a Confrontation Clause objection regarding the pen packets, which were properly authenticated and admitted; and (viii) the trial court could reasonably have concluded that the excluded cross-examination regarding finger-print comparison techniques was cumulative.

Notwithstanding the judgment, the record reflects that appellant pled "not true" to the enhancement paragraphs and the jury found them true.

For these reasons, we modify the trial court's judgment and as modified, affirm.

## I.  Background

One evening, appellant, Flowers, Flowers's girlfriend Brown, and appellant were sitting around with others in front of an apartment building drinking beer.  At some point, Flowers overheard Brown tell appellant that Flowers wanted appellant out of the way so he could have Brown.  Flowers approached appellant, denied what Brown said, and left for a friend's house.

–2–

Later, Flowers met appellant in a parking lot to talk to him about what Brown had said. That discussion led to appellant hitting Flowers with a gun, Flowers running away with appellant chasing and yelling at him, appellant twice shooting at Flowers during the ensuing chase.

Edward Calhoun, the lead detective, investigated the offense. Appellant was eventually arrested and charged with aggravated assault by threat with a deadly weapon.

The case was tried to a jury. Flowers testified about the offense and appellant's subsequent attempts to persuade him to file an affidavit of non-prosecution. The State's witnesses also included (i) the patrol officer who interviewed Flowers and called the paramedics, (ii) the crime-scene analyst who collected the shell casing at the scene, (iii) Detective Calhoun, (iv) the manager of the Dallas County inmate phone system, and (v) an investigator who obtained appellant's recorded telephone calls from jail.

The defense did not present witnesses. Instead, the defense focused on criticizing the investigation and arguing that Flowers's testimony was not credible.

The jury found appellant guilty as charged in the indictment. Although the State asked for a life sentence, the jury assessed punishment at forty-eight years in prison.

## II.  Analysis

### A.  First Issue:  Is the evidence sufficient to support appellant's conviction?

Yes. Flowers's testimony alone supported the verdict and there was additional evidence against appellant.

#### 1.  Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the factfinder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. *See* TEX. PENAL CODE § 22.01(a)(2). The gist of assault by threat is that the defendant "acts with intent to cause a reasonable apprehension of imminent bodily injury." *Fagan v. State*, 362 S.W.3d 796, 798 (Tex. App.—Texarkana 2012, pet. ref'd). A person commits aggravated assault if he uses or exhibits a deadly weapon while committing the assault. *See* PENAL CODE § 22.02(a)(2) "A perception of 'some threat of imminent bodily injury,' coupled with the use of a deadly weapon, supports a conviction for aggravated assault." *Olivas v. State*, 203 S.W.3d 341, 350 (Tex. Crim. App. 2006).

## 2. Application of Law to Facts

Here, the indictment alleged that appellant intentionally and knowingly threatened Flowers with imminent bodily injury and used and exhibited a deadly weapon—a firearm—during the commission of the offense.

Flowers testified about meeting appellant in the parking lot to talk about what Brown had said. Appellant had a gun in his lap when Flowers arrived. When Flowers got up and started walking, appellant hit Flowers on his left ear with the gun. When appellant hit him again, Flowers started to run.

Flowers could hear appellant running behind him and "hollering." When Flowers had run about a half a block, appellant fired the gun in Flowers's direction. Flowers saw the gun and felt threatened.

Flowers hid, and came out after about a minute and a half. When he did so, the chase resumed, and Flowers heard another gunshot. Flowers hid again and called the police.

Officer Brandon Helms testified that he received a dispatch about an active shooter and arrived in the area within two to three minutes. He saw Flowers when he arrived.

A lot of blood was flowing from Flowers's ear, which was red and swollen. Photos of Flower's bloody ear were admitted into evidence and published to the jury. Helms said that he obtained Flowers's statement and called the paramedics. He also found a shell casing nearby.

Later that night, Flowers received a text message from Brown's phone that appeared to be from appellant. The message threatened that "this" was not over. The next day, Flowers went to the police station and told Detective Calhoun about the case and the text message.

Flowers also testified that, following appellant's arrest, appellant tried to persuade him to help get the aggravated assault charge dismissed. On one occasion, Brown approached, handed him her phone, and tried to get Flowers to talk to appellant. On another occasion, Flowers was

approached by a man who offered Flowers money for dropping the charge against appellant. The man said that appellant had sent him. Flowers said he did not accept the offer because he did not want appellant to hurt anyone else.

Appellant relies on testimony from the officer who found the shell casing to argue that the casing could have been from another incident and the remaining physical evidence does nothing to incriminate appellant. He also argues that Flowers's testimony was not consistent with the statements he gave and Flowers's ear injury is not consistent with being hit with the butt of a handgun.

But it was the jury's role to resolve conflicts in the testimony and weigh the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App 2018). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Id.* And if a victim's testimony is believed, that testimony alone is sufficient to support a guilty verdict. *Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd).

Considering the record as a whole, and applying the appropriate standard of review, we conclude the evidence is sufficient to support appellant's conviction for aggravated assault. Appellant's first issue is resolved against him.

**B.      Second and Ninth Issues: Did the trial court err by denying appellant's motion for mistrial?**

No. Under these circumstances, the trial court's instructions to disregard were sufficient to cure any harm from the testimony at issue.

Appellant moved for a mistrial twice; once during the guilt/innocence phase of trial and once during the punishment phase. Appellant's second issue argues that the trial court erred by overruling his mistrial motion when the State's witness testified to hearsay during the guilt/innocence phase. According to appellant, the trial court's instruction that the jury disregard

the testimony was insufficient to cure the error. Appellant's ninth issue argues that the mistrial motion was erroneously overruled when a probation officer testified about probation practices she personally observed.

We review the denial of a mistrial motion for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is the trial court's remedy for error that is "so prejudicial that expenditure of further time and expense would be wasteful and futile," and is required only in extreme circumstances where the prejudice is incurable. *Id.* A prompt instruction to disregard will ordinarily cure error associated with an improper question and answer. *See Ovalle v. State,* 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). "We generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

We begin with the hearsay testimony. The complained-of testimony occurred when Flowers was testifying about Brown trying to get him to talk to appellant on her cell phone. Flowers had already testified about two other things Brown had said and the trial court sustained defense counsel's objections. The prosecutor then cautioned Flowers not to go into what Brown said and asked if he knew whether appellant was on the other end of the phone. Appellant objected based on speculation and the trial court overruled the objection, adding "If he knows." Flowers then said "I really didn't know if he was on the phone or what she—that's what she told me, he was on the phone."

The trial court sustained defense counsel's objection, and upon request, instructed the jury to disregard Flowers's last statement. The defense then moved for a mistrial, which was denied.

During the punishment phase, the evidence showed that appellant had two prior murder convictions from 1982 and 1990 that were alleged for enhancement purposes. He was also placed

on probation in two drug cases, and had been on probation for about three months when he committed the current offense.

Appellant's probation officer, Dee Pedigo, testified about her experience with probation. When the State asked her, "Do you see prosecutors often put someone on probation - - even if they have violent history if the new offenses are not violent offenses," the trial court sustained appellant's objection that the question called for speculation or called for the witness "to make an opinion." After an intervening question, the prosecutor asked the question again. Appellant asserted the same objection and moved for an instruction to disregard. The trial court sustained the objection and gave the instruction. Appellant's mistrial motion was denied. Appellant now argues that the trial court erred by denying the mistrial because "the State kept pursuing speculative testimony from the probation officer that was irrelevant to appellant's case."

But appellant does not explain, nor is there evidence from which to conclude that any of the complained-of testimony was so extreme under the circumstances as to render ineffective an instruction to disregard. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). Significantly, Flowers did not testify about what appellant said—all he said was that Brown told him appellant was on the phone. Moreover, the jury knew that appellant was talking to Brown on her cell phone at the time because the jail call records were admitted into evidence. Pedigo merely testified about her personal observations in her interactions with prosecutors. And even if the Pedigo question was improper, appellant does not explain how the testimony caused him harm.

Under these circumstances, we conclude that the trial court's instructions to disregard Flowers's and Pedigo's statements cured any harm and the trial court did not abuse its discretion by denying appellant's mistrial motions. We resolve appellant's second and ninth issues against him.

**C.** **Third Issue: Did the trial court err by denying appellant's objection to the jail calls?**

No. There was sufficient evidence showing that appellant made the calls.

**1.** **Standard of Review and Applicable Law**

We review a trial court's decision to admit evidence for an abuse of discretion. A trial court does not abuse its discretion in admitting evidence if the court reasonably believes a reasonable factfinder could find the evidence was authenticated or identified. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). We will not reverse a trial court's ruling unless it "is so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Authentication is a condition precedent to admissibility. *See* TEX. R. EVID. 901(a). The proponent carries its burden to establish the evidence's authenticity by producing "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id*; *see Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). Rule 901(b) provides a list of non-exclusive methods for authenticating evidence. TEX. R. EVID. 901(b).

Regardless, "Evidence prematurely admitted in error may become admissible or be rendered harmless by subsequent evidence." *Mitchell v. State*, No. 05-16-00070-CR, 2016 WL 7163947, at *4 (Tex. App.—Dallas Nov. 30, 2016, pet. ref'd) (mem. op.); *see also Davis v. State*, 687 S.W.2d 78, 82 (Tex. App.—Dallas 1985, pet. ref'd) (any error in admitting photograph without proper authentication was "cured" when witness later testified that she was present when photograph was taken).

## 2. Application of Law to Facts

Scott Seacat, an employee of the company that runs the Dallas County inmate phone system testified about Exhibit 14, a CD recording of appellant's jail calls.[2] Seacat explained that every inmate is assigned a unique PIN that the inmate uses to make phone calls from jail. That PIN consists of the last five digits of the inmate's book-in number and the last four digits of the inmate's social security number. When an inmate makes a call, a recorded announcement advises that the call may be monitored or recorded. Seacat listened to Exhibit 14 and heard the advisory message.

Seancory Patton, an investigator, said he pulled appellant's calls from the system and linked the calls to appellant the book-in number used to place the calls.

On defense counsel's subsequent voir dire, Patton acknowledged that there were times when the machine cut off a call or did not otherwise function properly. He also said there were instances of inmates using another inmate's PIN. Defense counsel objected that Exhibit 14 was not properly authenticated. The trial court overruled the objection and admitted the exhibit into evidence.

Here, there was evidence from which the trial court could have concluded that the recordings were what they purported to be. (And there was no indication that there was an equipment malfunction or misidentification in this case). But even if Patton's and Seacat's testimony did not meet this threshold, the recording was subsequently authenticated with additional evidence.

After State's Exhibit 14 was admitted, three recorded jail calls from the exhibit were published to the jury. The first call was from November 5, 2017, and the second and third calls were from December 4, 2017. Each recording begins with the inmate identifying himself as Gary

---

[2] At a later time, Exhibit 14 was readmitted for record purposes only. The recorded jails calls were re-offered and admitted into evidence for all purposes as State's exhibit 14A.

–10–

Chappell. The woman on the other line is referred to as "Brown," and she calls appellant "Chappell."

In the November 5 recording, Brown tells appellant that a warrant was issued for his arrest because the detective tried to contact him but appellant would not speak to him. At one point, Brown says it is Flowers's word over appellant's.

The same two voices are on the December 4 calls. In the first call, Brown tries to get Flowers take the phone to talk to appellant and tells appellant that Flowers does not want to talk to him. Appellant tells Brown to tell Flowers how much he wants an affidavit of non-prosecution.

In the second call, Brown says Flowers is lying about not pressing charges, and tells appellant that Flowers is nearby if appellant wants to talk to him.

Detective Calhoun testified that he tried to contact appellant to hear his side of the story but was unable to do so. Consequently, Calhoun filed the warrant. And Flowers testified that Brown approached him on the street and tried to get him to talk to appellant on the phone. Taken as a whole, from this evidence a jury could reasonable determine that the recorded calls were authentic. *See* TEX. R. EVID. 901(b)(4); *see also Patton v. State*, 03-03-00279-CR, 2004 WL 1403679, at *4–5 (Tex. App.—Austin June 24, 2004, pet. ref'd) (mem. op., not designated for publication). We thus resolve appellant's third issue against him.

D.      **Fourth Issue: Did the trial court err by granting the State's motion in limine?**

No. A motion in limine ruling preserves nothing for review.

During Detective Calhoun's testimony the trial court heard the State's motion in limine. The prosecutor told the court that the State had told appellant about two incidents related to Calhoun: (i) a 2002 improper/unnecessary force allegation and (ii) a 2017 improper investigation allegation. The State argued that both incidents should be excluded under rule 403. Appellant's

counsel responded that he had no interest in the 2002 incident but the 2017 incident would be relevant on cross-examination. The trial court granted the motion in limine.

Appellant's fourth issue argues the trial court erred by granting the motion. This issue, however, presents nothing for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

A motion in limine, whether it is granted or denied, does not preserve error. *See Wilson v. State*, 7 S.W.3d 136, 144 (Tex. Crim. App. 1999). A ruling on a limine motion is not constitute a ruling on the merits, but merely requires the parties to approach the court for a definitive ruling before attempting to introduce evidence within the scope of the motion. *See Taylor v State*, 555 S.W.3d 765, 780 (Tex. App.—Amarillo 2018, pet. ref'd).

Here, there is no indication that appellant ever requested or obtained a ruling on the merits after the limine motion was granted. Accordingly, there is no error to review. *See Davis v. State*, No.03-01-00619-CR, 2003 WL 21939477, at *20 (Tex. App.—Austin Aug. 14, 2003, pet. ref'd) (mem. op., not designated for publication). Appellant's fourth issue is resolved against him.

## E. Fifth Issue: Was it error to overrule appellant's objection to the State's jury argument?

No. The State's argument concerning appellant's pre-arrest use of false names did not refer to appellant's decision to not testify.

Appellant's fifth issue argues that the trial court erred by overruling his objection to the State's improper jury argument. Specifically, appellant claims that the argument concerned his Fifth Amendment right not to testify.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Permissible jury argument must generally be (i) a summation of the evidence, (ii) reasonable deductions from the evidence, (iii) an answer to the argument of opposing counsel, or (iv) a plea for law enforcement. *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994).

Prosecutorial comment that refers to an accused's failure to testify violates the accused's Fifth Amendment right against compelled self-incrimination. *See Griffin v. California*, 380 U.S. 609, 615 (1965); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). But such a comment must clearly refer to the accused's failure to testify; it is not sufficient if it "might be construed as an implied or indirect allusion." *Bustamante*, 48 S.W.3d at 765. The "test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* Thus, the comment must be analyzed in context. *See id*.

During the State's closing argument, the prosecutor reminded the jury that appellant initially lied to the police about his name:

> That's exactly it. Why would you lie? Why would you lie? Unless you had something to hide, right? Why would you give a fake name? Why would they - - Why would they search four different databases, four different names that are provided - -

Defense counsel's objection that the argument "invad[ed] the province of the Fifth Amendment" was overruled.

The evidence showed that on the night at issue, an officer stopped a vehicle in which appellant was a passenger, but the officer was unable to confirm appellant's identity because appellant gave several false names.

The prosecutor's comment referred to this evidence and, rhetorically asked the jury to reasonably deduce that appellant exhibited consciousness of guilt by hiding his identity. A rhetorical question based on the evidence is permissible as long as it does not point to a defendant's lack of explanation. *See Wolfe v. State*, 917 S.W.2d 270, 280 (Tex. Crim. App. 1996). The question here did not do so. Nothing in the argument about appellant's pre-arrest behavior refers to appellant's failure to testify, explain, or present evidence. *See Myers v. State*, 573 S.W.2d 19,

–13–

20–21 (Tex. Crim. App. 1978) (improper argument when prosecutor said there had been no explanation because only the defendant or co-defendant could have given an explanation).

Accordingly, we conclude the trial court did not abuse its discretion by overruling appellant's objection and resolve appellant's fifth issue against him.

**F.    Sixth Issue:  Was it error to overrule appellant's objection to the State's fingerprint expert?**

No.  The record does not reflect the nature of appellant's objections or the trial court's rulings.

Appellant's sixth issue argues that: (i) the trial court erred by overruling his objection to Daren Hodge "being submitted as an expert witness" and (ii) the trial court erred by denying his request to voir dire Hodge under rule 705(b).

We review the trial court's decision to allow expert testimony for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).  We will uphold a trial court's ruling on the admissibility of an expert witness as long as it falls within the zone of reasonable disagreement.  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Expert testimony is generally subject to three requirements: (i) the expert must be qualified; (ii) the expert testimony must be reliable; and (iii) the expert testimony must be relevant.  *See Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).  Qualification is distinct from reliability and relevance and is therefore evaluated independently.  *Id.*

Appellant, however, does not say which of the above requirements was not met and where the trial court specifically ruled otherwise.  The applicable Hodge objection and ruling occurred when the State asked Hodge for his opinion on the comparisons between appellant's fingerprints and the fingerprints in appellant's pen packets[3].  When the State began that line of questioning,

---

[3] A "pen packet" is a document compiled by a prison official based on other primary documentation received from the clerk of the convicting court.  *See Flowers v. State*, 220 S.W.3d 919, 923, n.14 (Tex. Crim. App. 2007).

defense counsel objected that the "witness has not been submitted as an expert before this Court." The trial court overruled the objection.

Defense counsel then asked: "Well, may I take him on voir dire? I was waiting for him to be submitted as an expert." An off-the-record bench conference ensued, after which the trial court said, "All right. Your objection is overruled, Counsel." But the bench conference was not recorded.

Although defense counsel may have wanted to voir dire the witness on his qualifications, we cannot speculate about the basis for the request or the trial court's ruling. Thus, appellant's complaint that the trial court erroneously allowed Hodge to be "submitted as an expert" preserves nothing for our review. *See Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (failure to identify whether objection pertains to qualification, reliability, or relevance preserves nothing for review).

Likewise, we cannot conclude the trial court erroneously denied appellant a rule 705(b) hearing. Indeed, the record does not reflect that such a hearing was affirmatively requested. Rule 705(b) concerns an expert's reliability, and requires that an adverse party be permitted to examine the expert about underlying facts and data outside the jury's presence. *See* TEX. R. EVID. 705(b). "Because Rule 705(b) is mandatory, a trial judge's denial of a timely and proper motion for such hearing would constitute error." *Alba v. State*, 905 S.W.2d 581, 588 (Tex. Crim. App. 1995). But a general request to voir dire a witness does not constitute a proper request for a rule 705(b) hearing. *See Jenkins v State*, 912 S.W.2d 793, 814 (Tex. Crim. App. 1993).

Thus, because the record does not reflect that a rule 705(b) hearing was requested and denied, we resolve appellant's sixth issue against him.

**G. Seventh Issue:  Were appellants' pen packets improperly admitted in violation of the Confrontation Clause, the Hearsay Rule, and the Authentication Rule?**

No.  Appellant did not assert a Confrontation Clause objection and the pen packets were properly admitted as official government records.

Appellant's seventh issue argues that the trial court erroneously admitted his pen packets, Exhibits 15-19, during the trial's punishment phase.  According to appellant, "the reports" in the exhibits contained hearsay within hearsay and "testimonial statements that were inadmissible under the Confrontation Clause."  *See generally, Crawford v. Washington*, 541 U.S. 51, 68 (2004) (Confrontation Clause prohibits the admission of testimonial hearsay).

Appellant objected to exhibits 15, 16, and 17 based on hearsay and improper authentication.  He similarly objected to exhibits 18 and 19.  However, there was no Confrontation Clause objection or argument in either instance, and a general hearsay objection does not preserve a Confrontation Clause complaint.  *Reya v. State,* 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).  We therefore limit our review to appellant's hearsay argument.

Regarding exhibits 18 and 19, the documents containing hearsay were removed before the exhibits were introduced into evidence.  Appellant does not identify anything further that he claims is hearsay.  Thus, there is nothing for us to review.  *See* TEX. R. APP. P. 33.1; *see also Barnes v. State*, 876 S.W.2d 316, 329 (Tex. Crim. App. 1994) (global hearsay objection to entire pen packet insufficient to preserve error as to specific subset of documents within the packet).[4]

Regarding exhibits 15, 16, and 17, appellant also does not explain which part of the "reports" allegedly include hearsay.  *See* TEX R. APP. P. 33.1; *Barnes*, 876 S.W.2d at 329.  Moreover, even had the issue been preserved for review, the State introduced certified copies of

---

[4] In the court below, appellant's counsel complained that the court should have ruled on his hearsay objection before removing the hearsay from the documents.  When the trial judge explained that the exhibits had been admitted without the hearsay, defense counsel replied, "So my objection is overruled?"  The Court replied affirmatively.

the pen packets.  Therefore, the exhibits were self-authenticated public records.  *See* TEX. CODE

CRIM. PROC. art. 42.09 §8(b); *see also Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991).[5]

Public records are excepted from the hearsay exclusion if they set forth matters observed under a

legal duty to report such matters, excluding, in criminal cases, matters observed by police officers

and other law enforcement personnel.  *See* R. EVID. 801(d). Pen packets fall within this definition.

*See Jones v. State*, 572 S.W.3d 841, 849 (Tex. App.—Houston [14th Dist.] 2019, no pet.).  Thus,

the trial court did not err when it overruled appellant's hearsay objection.  Appellant's seventh

issue is resolved against him.

**H.     Eighth Issue:  Was it error to sustain the State's objection to appellant's cross-examination of the State's fingerprint expert?**

No.  The trial court has the discretion to limit cross-examination and the decision here was

not outside the zone of reasonable disagreement because the trial court could have reasonably

concluded that the subject had already been exhausted.

While cross-examining the State's fingerprint expert, Hodge, appellant's counsel tried to

suggest that the 12 point standard the FBI used to compare fingerprints was outdated and had been

recently replaced with a new standard.  Then on re-cross, counsel continued:

> **Defense**: Now, Officer, did - - you said that you were comfortable with the 12 points.  What standard would you base - - base that on?
>
> **Hodge**: That was the FBI standard.
>
> **Defense**: But I thought you just said the FBI didn't have a standard?
>
> **Hodge**: They do not set the standard.

---

[5] Specifically, section 8(b) of article 42.09 of the Code of Criminal Procedure provides:

> The Texas Department of Criminal Justice shall not take a defendant into custody under this article until the designated officer receives the documents required by Subsections (a) and (c) of this section. The designated officer shall certify under the seal of the department the documents received under Subsections (a) and (c) of this section. A document certified under this subsection is self-authenticated for the purposes of Rules 901 and 902, Texas Rules of Evidence.

TEX. CODE CRIM. PROC. art. 42.09 §8(b).

**Defense**: So . . . again, it goes back to my question. If the FBI has increased that standard, then you would be using an outdated standard; is that correct?

**Hodge**: No, sir. They do not set the standard.

**Defense**: Well, why did you use the FBI standard?

**Hodge**: That was a standard that they used back when I went through the school, and that's what I felt comfortable with.

**Defense**: And so if they updated because of . . . misidentification of . . . a fingerprint, then you would be using an outdated standard; is that correct?

**Hodge**: No, sir.

**Defense**: Now, do you remember the - - the Moroccan bomber bombing that gentleman and his fingerprints was found . . . by the FBI? They checked his fingerprints, and they said he was the person. And they later found out using that 12 point of comparison he had never been to Morocco. Are you familiar with that?

The State objected based on relevance, and appellant's counsel responded, "It's relevant. Judge, it is relevant in the FBI standard that he's using that has been approved." The trial court sustained the objection.

Appellant argues that the trial court erred by sustaining this objection. Appellant generally argues that the trial court impermissibly limited his cross-examination and that such limitation violated the Confrontation Clause thereby denying him of his right to a fair trial. Most of appellant's complaint, however, has not been preserved for our review.

To preserve an issue for appellate review, a party must make a timely objection or request to the trial court, sufficiently stating the specific grounds for the requested ruling, unless apparent from the context, and obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Moreover, the objection or request at trial must comport with the complaint presented on appeal. *Wilson*, 71 S.W.3d at 349. Even constitutional errors may be forfeited by failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). When a party's argument for admitting evidence could refer to either the Rules of Evidence or the Confrontation Clause, he must specifically articulate that the Confrontation Clause

demands admission of the evidence to preserve error on this ground. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005).

Appellant's only trial objection concerned the testimony's alleged relevance. Thus, the Confrontation Clause argument was not preserved for review, and we consider only whether the trial court erred by sustaining the State's objection to the testimony.

The right of cross-examination is not unlimited and the trial court retains wide latitude to impose reasonable limitations. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). In determining such limitations, the court must balance probative value against prejudicial risks, including confusion of the issues and undue delay. *See Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993). The trial court's ruling is not reversible unless the appellant shows a clear abuse of discretion. *Id.*

Rule 401 provides that evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401. Thus, there must be a direct or logical connection between the actual evidence and the proposition sought to be proved. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). Generally, all relevant evidence is admissible. *Id.*; *see also* TEX. R. EVID 402.

Here, before the objection was sustained, defense counsel had already cross-examined Hodge extensively about the 12 point system's reliability. Thus, the trial judge could well have concluded that the question added nothing new to this line of questioning or that the subject had been exhausted. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Under these circumstances, we conclude the trial court's ruling was not outside the zone of reasonable disagreement and resolve appellant's eighth issue against him.

**J.     State's Cross-point:  Should the judgment be modified?**

The State asks us to modify the judgment to reflect that appellant pled "not true" to the enhancement paragraphs and the jury found them true.  We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so.  *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record reflects that that appellant pled "not true" to the enhancement paragraphs and the jury found them true.  We thus sustain the State's cross-point and modify the judgment accordingly.

**K.     Cause Numbers 05-18-01306-CR and 05-18-01307-CR—Anders Brief and Motion**

Following appellant's aggravated assault conviction discussed above, the State moved to adjudicate guilt and revoke community supervision in cause number 05-18-01306-CR (delivery of a controlled substance enhanced with a prior conviction) and a motion to revoke community supervision in cause number 05-18-01307-CR (delivery of a controlled substance enhanced with two prior convictions).  Appellant pled guilty to both offenses and true to the enhancement paragraphs.  The trial court deferred adjudication and placed him on community supervision for one offense, and assessed punishment at ten years in prison, suspended, with appellant placed on community supervision for the other offense.

Appellant's counsel has filed an *Anders* motion to withdraw in the above causes.  The motion is supported by a brief in which counsel professionally and conscientiously examines the record and applicable law and concludes that this appeal is frivolous and without merit.  Counsel provided appellant with a copy of the brief and the motion to withdraw.

The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967).  It presents a professional evaluation of the record showing why, in effect, there are no arguable grounds to

advance. *See High v. State*, 573 S.W.2d 807, 812 (Tex. Crim. App. [Panel Op.] 1978) (determining whether brief meets requirements of *Anders*).

We advised appellant of his right to file a pro se response, but he did not file a pro se response. *See Kelly v. State*, 436 S.W.3d 313, 319–21 (Tex. Crim. App. 2014) (appellant has right to file pro se response to *Anders* brief filed by counsel).

We have reviewed the record and counsel's brief. *See Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005) (explaining appellate court's duty in *Anders* cases). We agree the appeals are frivolous and without merit. We find nothing in the record that might arguably support the appeals.

We therefore grant counsel's motion to withdraw in cause numbers 05-18-01306-CR and 05-18-01307-CR and affirm the trial court's judgments.

### III. CONCLUSION

The trial court's judgments in all three cause numbers are affirmed.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181306F.U05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

GARY LEE CHAPPELL, Appellant

On Appeal from the 195th Judicial District Court, Dallas County, Texas

No. 05-18-01306-CR          V.

Trial Court Cause No. F-1653354-N.
Opinion delivered by Justice Whitehill.

THE STATE OF TEXAS, Appellee

Justices Schenck and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** To reflect that appellant pled "not true" to the enhancement paragraphs and the jury found them "true."
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 3, 2019



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARY LEE CHAPPELL, Appellant

No. 05-18-01307-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-60423-N.
Opinion delivered by Justice Whitehill.
Justices Schenck and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** To reflect that appellant pled "not true" to the enhancement paragraphs and the jury found them "true."
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 3, 2019



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARY LEE CHAPPELL, Appellant

No. 05-18-01308-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F17-76639-N.
Opinion delivered by Justice Whitehill.
Justices Schenck and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** To reflect that appellant pled "not true" to the enhancement paragraphs and the jury found them "true."
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 3, 2019